O'Connor vs. Semple.

*February 26 — March 13, 1883*

*Agency to make a sale of lands: contract construed.*

S. agreed to pay O. $500 if the latter made a sale of certain lands, or found for S. a satisfactory customer therefor, at a fixed price and upon certain conditions as to payment. Afterwards S. gave O. "till October 10th to close out" the lands upon those terms. O. had no authority to enter into any final contract of sale and bind S. *Held,* that if, within the time limited, O. made a verbal sale to a responsible party, and, *within a reasonable time thereafter,* gave notice to S. and produced the purchaser who was able and willing to complete the purchase on S.'s terms, O. was entitled to recover the agreed compensation, although he did not produce the purchaser in time so that all the papers necessary to complete the sale could be executed by October 10th.

APPEAL from the Circuit Court for *Shawano* County.

Action to recover the amount of a commission agreed to be paid for the finding of a purchaser for certain lands in towns 32 and 33 in Taylor county, Wisconsin.

The agreement under which the plaintiff claims was contained in the following letters:

"Shawano, Wis., June 25, 1881.

"*John O'Connor, Esq.* — Dear Sir: Your favor of the 22d inst. is just at hand. Herewith find list of lands in towns 32 and 33, R. 4, west, Taylor Co., Wis. The whole tract ought to go together, but if desired would sell each town separate. Our estimates of timber in T. 32, R. 4, is 3,100 M., price ($6,000) six thousand dollars. Our estimate

of timber in T. 33, R. 4, lands herewith described, is 6,800 M., price ($14,000) fourteen thousand dollars. The timber is conceded by all who have knowledge of same to be first class. Will allow you a commission of six per cent. on sales you may make. If you make sale of whole tract, or find us a satisfactory customer for same, we will pay you·$1,500. Our terms would be one fourth or one fifth down and balance as timber was cut, with interest at eight per cent. per annum.          Truly yours,          P. SEMPLE."

"SHAWANO, WIS., September 23, 1881.

"*John O'Connor, Esq., Eau Claire, Wis.* — DEAR SIR: In reply to your favor of the 18th, would say, that we have decided to give you till October 10th to close out lands in towns 32 and 33, R. 4, W., upon terms given you. If not closed by that time shall withdraw the same from market for the present, or at least at price named.

          "Yours truly,          A. & P. SEMPLE."

Other facts are stated in the opinion. The defendant appealed from a judgment in favor of the plaintiff.

For the appellant there was a brief by *E. H. Ellis & Merrill,* and the cause was argued orally by *Mr. B. J. Stevens* and *Mr. Ellis.* They contended, *inter alia,* that the plaintiff was acting under a special contract to make a sale of the lands, or find a satisfactory customer therefor, but there is no proof of any valid sale or that he found a customer satisfactory to the defendant, or that the defendant ever had an opportunity to decide whether Mr. Murphy was a satisfactory purchaser or not. It was the duty of the plaintiff to bring his customer to the defendant in Shawano county, and the money required to be paid down should have been tendered there, and the purchaser should have offered at that time and place to sign any contract or mortgage or other security for the payment of the balance, which the defendant could reasonably have demanded. *N. W. Iron Co. v. Meade,* ·21 Wis., 474; *Baker v. Holt,* 56 id., 100. Moreover, the

O'Connor vs. Semple.

plaintiff was bound to do all this — to complete the contract — on or before October 10th. This was the contract, and it is the duty of the court to enforce it as the parties made it. *Heath v. Van Cott*, 9 Wis., 516; *Zaleski v. Clark*, 44 Conn., 218; *S. C.*, 26 Am. Rep., 446; *Brown v. Foster*, 113 Mass., 136; *Tyler v. Ames*, 6 Lans., 280; *Hart v. Hart*, 22 Barb., 606; *McCarren v. McNulty*, 7 Gray, 139; *Huebner v. Koebke*, 42 Wis., 319; *Cline v. Libby*, 46 id., 123; *Walker v. Tirrell*, 101 Mass., 258; Story on Agency, secs. 329–331; Paley on Agency, 104. Time was of the essence of the contract. *Warren v. Bean*, 6 Wis., 120; *B. & M. R. R. Co. v. Boestler*, 15 Iowa, 555; *Wells v. Smith*, 2 Edw. Ch., 78; Pomeroy on Sp. Perf., sec. 382; *Hipwell v. Knight*, 1 Y. & C. Ex., 401. That strict performance was necessary and will not be excused by difficulty; see 2 Parsons on Con., 528, note q., 672, and cases cited in note h., and 675, sec. III; *Booth v. S. D. R. M. Co.*, 3 Thomp. & C., 368; *Crane v. Knubel*, 43 How. Pr., 393; *The Harriman*, 9 Wall., 161; *Nelson v. Plimpton F. P. E. Co.*, 55 N. Y., 480; *Huling v. Craig*, Add. (Pa.), 342; *Walker v. Tirrell*, 101 Mass., 257; *McArthur v. Slauson*, 53 Wis., 41.

*Gabe Bouck*, for the respondent, to the point that when the plaintiff had procured a person able, ready, and willing to enter into a valid contract to purchase upon the terms fixed, the commission was earned, cited: *Watson v. Brooks*, 15 Cent. L. J., 308; *Fox v. Rouse*, 47 Mich., 558; *Phelan v. Gardner*, 43 Cal., 306; *Mooney v. Elder*, 56 N. Y., 242; *Moses v. Bierling*, 31 id., 464; *Barnard v. Monnot*, 3 Keyes, 203; *Hinds v. Henry*, 36 N. J. L., 332; *Heinrich v. Korn*, 4 Daly, 75; *Cook v. Kroemeke*, id., 268; *Stillman v. Mitchell*, 2 Rob., 523; *McGavock v. Woodlief*, 20 How., 227; *Kock v. Emmerling*, 22 id., 69; *Van Lien v. Byrnes*, 1 Hilt., 134; *Holly v. Gosling*, 3 E. D. Smith, 262; *Glentworth v. Luther*, 21 Barb., 145; *Cook v. Fiske*, 12 Gray, 491. See, also, *Lincoln v. McClatchie*, 36 Conn., 136; *Bell v. Kaiser*, 50 Mo.,

150; *Tyler v. Parr*, 52 id., 249; *Jones v. Adler*, 34 Md., 440; *Lloyd v. Mathews*, 51 N. Y., 124; *Sussdorf v. Schmidt*, 55 id., 320; *Chilton v. Butler*, 1 E. D. Smith, 150; *Hanford v. Shapter*, 4 Daly, 243; *Timberman v. Craddock*, 70 Mo., 638; *Stewart v. Mather*, 32 Wis., 350; *Murray v. Currie*, 7 Car. & P., 584; *Wilkinson v. Martin*, 8 id., 1; *Burnett v. Bouch*, 9 id., 620; *Green v. Bartlett*, 14 Com. B., N. S., 681; *Durkee v. Vt. Cent. Railway*, 29 Vt., 127. That the plaintiff and Murphy did not see Semple on the morning of the 11th, was the fault of Semple, not theirs. *Chambers v. Jaynes*, 4 Pa. St., 43; *Preston v. Finney*, 2 Watts & S., 53; *Hovey v. Pitcher*, 13 Mo., 191.

COLE, C. J. It will aid materially in disposing of the questions so ably discussed on the argument, to bear in mind the leading facts of this case. The jury found, in answer to questions submitted, that the plaintiff did, on the 7th of October, 1881, find a purchaser for, and make a sale of, the whole of the land in towns 32 and 33, for $20,000, $5,000 cash down, the balance to be paid as the timber was cut from the lands, with interest at eight per cent. per annum; that such purchaser was ready, prepared, able, and willing to carry out the purchase on his part; that the plaintiff and the purchaser after the sale used due and reasonable diligence to notify the defendant of the sale, and to complete and carry it out; that the defendant made no objection to the purchaser that he was irresponsible, or on any other personal ground, but refused on his part to carry out the sale; that the defendant first received information from the plaintiff that he had secured a purchaser on the 12th of October. It cannot justly be claimed that the jury were not warranted in finding these facts from the evidence, and they must therefore be deemed correct.

The contract of employment, as contained in the letter bearing date June 25, 1881, and as modified by that of Sep-

tember 23, 1881, was in substance this: The defendant, or his agent, agreed to allow the plaintiff a commission of six per cent. on sales which he might make,— that is, of lands in town 32, for $6,000; lands in town 33, for $14,000; and that if plaintiff made sale of all these lands, or found for the defendant a satisfactory customer for the same, the defendant would pay him $1,500. The terms of sale were one fourth or one fifth down, the balance to be paid as timber was cut from the lands, with interest at eight per cent. per annum; all the lands to be sold or "closed out," on the terms prescribed, on or before the 10th of October, 1881, and if not closed out by that time that the lands would be withdrawn from market at the price named. It will therefore be seen that the question is, Did the plaintiff earn his commission of $1,500 under this contract? It is claimed by the learned counsel for the defendant that he did not; because, as they say, he did not make a sale of the lands to any one, nor produce a satisfactory customer to the defendant before the expiration of his employment. This calls for a construction of the letters above referred to. Now, according to our construction of them, the plaintiff would fully perform on his part if he made sale of the lands on the terms specified, or found a satisfactory customer, on or before October 10th. He would have a reasonable time after that date to bring the purchaser to the defendant to complete the sale by the execution of the proper papers. At all events, we are quite clear that the plaintiff was not bound to make the sale and to produce the purchaser to the defendant by the 10th of October. Such is not the fair, natural import or meaning of the letters. Assuming, then, our interpretation of the letters to be correct, do not the facts show a full performance by the plaintiff? The jury found that he made a sale on the 7th of October of all the lands, for the price and conditions named, to Mr. Murphy, and that this purchaser was able, willing, and prepared to complete the purchase on his part. But it

is said the purchaser was not brought to the defendant, nor was the defendant notified of the sale made, until the 12th of October, therefore he was under no obligation to carry it out or pay the plaintiff his commission.

We have said that the plaintiff had a reasonable time after the 10th of October to bring the purchaser to the defendant. The defendant's agents, in reply to the plaintiff's letter of September 18th, say: "We have decided to give you till October 10th *to close out*" the lands, etc. This language is rather indefinite, but it does not admit of the construction that the plaintiff was not only bound to make a sale, but likewise to produce the purchaser to the defendant within the period limited. The object of both letters was to give power to the agent to make or negotiate a sale, or produce a satisfactory customer by the given time. The parties resided at considerable distance from each other,— the plaintiff at Eau Claire; the defendant at Waukechon, Shawano county. A day or more would necessarily be consumed in getting notice of a sale to the defendant, or in producing a purchaser at his residence, even if he remained at home. In view of the situation of the parties, it is fair to assume, if the defendant had intended to limit the authority of the plaintiff, not only of making the sale to a responsible party in the time limited, but also to producing such purchaser to him, so that the final contract could be consummated before October 10th, he would have said so in clear language.

But it is further said by defendant's counsel that the plaintiff never made a sale of the lands to any one so as to earn his commissions. This objection is based on the assumption that it was necessary for the plaintiff to have entered into a valid written agreement which would have bound both parties in order to entitle him to them. This he did not do, nor was it essential that he should. In a written note delivered by Murphy to plaintiff, dated October 7th, the

former said in substance he would take the lands at defend-ant's price, and on the conditions named. It appears from the evidence, as well as from the special verdict, that this purchaser was always ready, able, and anxious to complete the purchase. It is apparent that the plaintiff had no authority whatever to enter into any final contract of sale and bind the defendant. The most he could do under the power given him was to find a responsible party who would agree to take the lands on the terms proposed, and who would make the first payment and execute final contracts of sale satisfactory to the defendant. The plaintiff had no power whatever to prescribe the terms and conditions of the final contract. If within the period limited he made a verbal sale to a responsible party, and within a reasonable time thereafter gave notice and produced the purchaser, who was able and willing to complete the purchase on defendant's terms, the plaintiff would perform on his part. It was certainly not essential that he should produce the purchaser in time, so that all the necessary papers could be executed by the 10th, to earn his commission. The jury found that the sale was made on the 7th, and that the plaintiff and purchaser used due and reasonable diligence to notify the defendant of the same, and to complete and carry out the purchase.

Within the well-established doctrine the plaintiff, then, is entitled to recover his claim. True, the jury found that the defendant did not receive information from the plaintiff that he had effected a sale until the 12th of October. But, as a question of law, we should have no hesitation in saying that notice was given within a reasonable time, considering the circumstances. It is also true that the purchaser did not see the defendant or his agent, but he used diligence and made an honest effort to see him and complete the purchase on his part. The evidence shows, and the fact is not denied, that plaintiff and Murphy left Eau Claire about midnight of the

9th to go and see the defendant or his agent. They failed to make railroad connection at Merrillan junction as they expected. As a consequence they did not reach Clintonville, the nearest railroad station to Waukechon — but about fourteen miles from the same — until the morning of the 11th. There they learned that Pharlan Semple, the defendant's agent with whom all the business had been transacted, had gone to Oshkosh. But when they arrived at Oshkosh they found that P. Semple had gone to Milwaukee. Murphy waited a day or two for him to return, and then himself went home to attend to his business. He directed the plaintiff, however, to notify him by telegraph when P. Semple returned, and to tell Semple to draw on him for $5,000 through the First National Bank, and to ascertain whether Semple desired him to come to Oshkosh or to his place of residence to complete the sale, or whether Semple would come to Chippewa Falls, where he lived, to transact the business. What more could the purchaser do to show his ability and readiness to consummate the trade? It is very evident that Murphy was anxious to secure the lands, and was abundantly able to comply with the terms.

P. Semple must have been satisfied of that fact from the interview he had with him at Chippewa Falls on the 4th of November, when Murphy offered to pay in cash the entire consideration and a *bonus* of $500 if he would let him have the lands. So it is apparent it was not through any fault of the plaintiff, or of the purchaser produced by him, that the sale made on the 7th was not carried out. It is not difficult to discover the reason why it was not. The defendant made a sale of the timber on the lands to the Chippewa Lumber & Boom Company for about $20,000, which was a much more advantageous trade for him. The plaintiff claims that the sale to the lumber and boom company was brought about through his agency or procurement, and the jury in effect so find.

But we shall not go into that branch of the case, because we hold that the plaintiff earned his commissions by the sale made to Murphy on the 7th of October.

A number of other points were discussed, but it is deemed unnecessary to consider them. The view which we have taken of the plaintiff's employment is decisive of the case. That the complaint is sufficient to enable the plaintiff to recover for the sale made on the 7th, it seems to us is quite too plain to require argument. The case appears to have been fairly submitted under a charge which contains nothing of which the defendant can justly complain. All exceptions in regard to the admission or exclusion of evidence given or offered become immaterial in view of what has been said.

*By the Court.*— The judgment of the circuit court is affirmed.